Sanford, J.
We have no doubt of the constitutionality, or of the salutary tendency, of the statute upon which this prosecution is founded; And we think it clear , that the statute is applicable ,to domestic and foreign lotteries alike, and without any reference to the question whether they are, or are not, authorized by the laws of the state in which they are located, or-the question whether the tickets are to be procured or sold in this, or in any other state.
*187 The act of publishing in this state a proposal to sell or procure any ticket in any lottery, legal, or illegal, in this state,' or out of it, is prohibited and punished by the statute. And, in our judgment, the only point in regard to which any serious question can arise is, whether the paper published by the accused is a proposal to sell or procure lottery tickets, or not. And, upon this point, we think the accused is right.
The statute is a penal one, and in order to subject the accused to its penalties, he must be shown to have offended against both its spirit and its letter.
The information indeed charges, and the demurrer admits, that the accused published an instrument which the prosecutor calls a proposal to sell and procure lottery tickets, but as he sets out that instrument, in words and figures, in the information, and without any explanatory allegations, averments or inuendoes, we have only to decide what is, upon its face, the fair import of the language of the instrument.
It is denominated by its authors a “ caution notice,” and, in its terms, it imports only a caution against the devices of fraudulent ticket venders, and the purchase of spurious ^lottery tickets. It suggests that the country is [' *229 ] flooded with swindling lotteries, and what lotteries and tickets should be avoided, and it informs the reader what lotteries are authorized by law, how genuine tickets in them may be distinguished from the spurious, and that purchasers in the Maryland State lotteries may be sure of fair and honest drawings. But the authors make no proposal to sell or procure lottery tickets, or any thing else. They do not profess to have such things for sale, or to be engaged in the business of selling or procuring them.
They do not even inform the reader where they reside, or transact business, nor how their address is to be ascertained. They do indeed, profess to be managers of the Maryland state lotteries, and of the Kentucky state lottery for the benefit of Shelby College. And they intimate that there are licensed ticket venders in Baltimore, but, who those licensed venders are, they do not, even intimate. And it by no means follows that managers of lotteries are, of course, sellers of lottery’ tickets. They may be mere public officers, intrusted by law with specific powers, and with duties toward the public, and the individuals or corporations for whose benefit the lotteries are granted, quite incompatible with the business of ticket selling.
It may be, as the prosecutor claims, that it was the design of the authors of the paper recited in the information, to evade the law, while they served their own selfish purposes, and effected *188 the evil which it was the object of the legislature by this statute to repress. ■
But this court can only execute the law as it is. If it is too narrow, the legislature.must extend it. And upon this demurrer the court can impute to the language of the recited paper, its ordinary, popular import and meaning only.
Thus construed, the instrument published by the accused was not a proposal to sell or procure lottery tickets. And the superior court should be advised that the information is insufficient.
In this opinion the other judges concurred.
Information insufficient.